# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **TRAVIS LEE,** | CASE NO. 2:08-cv-415 |
| | JUDGE GRAHAM |
| Petitioner, | MAGISTRATE JUDGE KEMP |
| v. | |
| **WARDEN, CHILLICOTHE CORRECTIONAL INSTITUTION,** | |
| Respondent. | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's motion to dismiss, petitioner's response, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## FACTS and PROCEDURAL HISTORY

The Ohio Third District Court of Appeals summarized the facts and procedural history of this case as follows:

> These charges stem from events occurring between October 30, 2005 and November 24, 2005. On October 30, 2005 Jason Hendrickson ("Hendrickson") stole a 2000 Honda Odyssey van ("Honda") from the driveway of Hans Schlecht in Marysville, Union County, Ohio. Hendrickson drove the Honda from Marysville to the west side of Columbus where he met up with Tommy Delaney. ("Delaney"). Hendrickson and Delaney proceeded to drive the Honda to the vicinity of Interstate 71 and Hudson Street in Columbus and leave the vehicle with Lee at his residence. Delaney received crack cocaine from Lee which he shared with Hendrickson. The Honda was later

recovered at Lee's house located at 2417 Osceola and was subsequently returned to its owner.

Sometime during the night of November 21, 2005 through November 22, 2005 Hendrickson stole a 1999 Ford Contour ("Contour") from the residence of Krista Burhts in Marysville, Union County, Ohio. Hendrickson picked up Delaney and they drove the Contour to Lee's house in Columbus, but parked it a couple of houses down from Lee's residence. Delaney received crack cocaine from Lee which he shared with Hendrickson. Later, Hendrickson and Delaney drove the Contour back to Marysville with another man named Charles Craig ("Craig") and left the Contour in an apartment complex parking lot in Marysville. Sometime later Delaney and Craig took the Contour back to Columbus and left it at a retirement apartment complex near Lee's house in Columbus. The Contour was subsequently located by the Columbus police and returned to Krista Burhts.

On November 24, 2005 Hendrickson stole a 1999 Chevrolet Blazer ("Blazer") belonging to Tammy Whaley from the driveway of Charles Inman in Marysville, Union County, Ohio. Hendrickson picked up Delaney and Craig and drove to Lee's where Hendrickson parked the Blazer on the street in front of Lee's residence. Lee gave Delaney crack cocaine and Hendrickson, Delaney, and Craig subsequently returned to Marysville. The Blazer was never recovered.

On March 8, 2006 a Union County Grand Jury indicted Lee on three counts of Receiving Stolen Property (one for each of the three cars that were stolen from Marysville) in violation of Ohio Revised Code Section 2913.51, and one count of Engaging in a Pattern of Corrupt Activity in violation of Ohio Revised Code Section 2923.32(A)(1), (B)(1) for the violations of R.C. 2913.51.

Lee pled not guilty to all four charges and the matter proceeded to a one day jury trial on May 8, 2006. At the end of the State's case, Lee moved for a Criminal Rule 29 Motion for Acquittal on all counts as to venue. The court overruled Lee's motion and the matter proceeded to Lee's case in chief.

At the close of all the evidence, the jury found Lee guilty of Counts I and II, Receiving Stolen Property in violation of R.C. 2913.51, both felonies of the fourth degree, and guilty of Count IV, Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the second degree. The jury found Lee not guilty of Count III, Receiving Stolen Property.

This matter proceeded to a sentencing hearing. The court sentenced Lee to 18 months in prison on each of Counts I and II, to be served consecutively to one another, and sentenced Lee to eight years in prison on Count IV, to be served consecutively to Counts I and II. Lee was granted 60 days jail time credit.

\*\*\*

At trial, the State called Jason Hendrickson as a witness. At the time of his testimony, Hendrickson was serving a jail sentence for receiving stolen property, theft, and failure to pay child support. (Tr. p. 53). Hendrickson testified that he had been subpoenaed to testify and that he had agreed as part of a plea agreement to testify truthfully in the case against Lee. (Tr. p. 54, 66).

Hendrickson testified that after stealing the Honda in Marysville he met Thomas Delaney and they immediately drove to Lee's house in Columbus where Delaney traded the Honda to Lee for crack cocaine. (Tr. pp. 55-56). Hendrickson testified that they parked the Honda on the road a couple of houses down from Lee's. (Tr. p. 59). Hendrickson testified that after stealing the Contour in Marysville, he picked up Delaney and within an hour they were at Lee's house where Hendrickson parked the Contour a couple of houses down from Lee's and believed Delaney initiated a trade for crack cocaine. (Tr. pp. 57-59).

Hendrickson also testified that after stealing the Blazer in Marysville he picked up Delaney and Charles Craig and they went to Lee's house where they parked the Blazer out front. (Tr. pp. 60-62). Hendrickson believes Delaney traded the Blazer

to Lee for crack cocaine because Delaney gave him crack. (Tr. p. 62). Finally, Hendrickson testified that on all three occasions Delaney initiated the deals with Lee, and that Delaney would go into Lee's house and come back out with crack, and on all three occasions he received crack cocaine. (Tr. p. 63-64). Hendrickson also testified that he spoke briefly with Lee when they went to Lee's with the Blazer and that the crack cocaine was on the coffee table. (Tr. p. 64).

The State also called Delaney as a witness. At the time of his testimony, Delaney was serving a jail sentence for three charges of receiving stolen property and one charge of trafficking in marijuana. (Tr. p. 69). Delaney testified that as part of his plea agreement on those charges he would receive a four year sentence in exchange for testifying truthfully against Lee. (Tr. p. 70).

Delaney testified that Hendrickson asked him if he could sell the Honda for some crack and that he helped Hendrickson "get rid of it" by taking the vehicle to Lee's house. (Tr. p. 72). Delaney testified that they parked the Honda on the street near Lee's house and that they exchanged the Honda with Lee for crack. (Tr. p. 73). Delaney also testified that Hendrickson stole the Contour and they drove Lee's house (sic) in Columbus where Delaney tried to trade the car for some dope. (Tr. p. 75). Delaney testified that Lee didn't want the Contour but Delaney still got dope from Lee and stated that they left the Contour on the street two blocks from Lee's house. (Tr. pp. 75-76). Finally, Delaney testified that after Hendrickson stole the Blazer he, Hendrickson and Craig drove to Lee's house where they parked the Blazer down the block. (Tr. p. 77). Delaney stated that he received crack from Lee in exchange for the Blazer. (Tr. p. 78). Delaney testified that after this deal he got the keys for the Contour from Lee and that he, Hendrickson and Craig drove back to Marysville. (Tr. p. 78-79).

Finally, the State called Craig as a witness. At the time of his testimony Craig was serving a jail sentence for a receiving stolen property charge unrelated to the present case. Craig testified that he went with Hendrickson and Delaney to Columbus in the Blazer to trade the Blazer to Lee. (Tr. p. 100).

Craig testified that the Blazer was parked on Lee's street, about three or four houses down from Lee's house. (Tr. p. 102). Craig also testified that he had moved vehicles for Lee in the past because Lee didn't want them in front of his house because they were stolen. (Tr. p. 103).

Lee testified on his own behalf and admitted that he knew Hendrickson, Delaney and Craig. In contrast to the evidence presented by the State, Lee testified that he did receive the Honda from Hendrickson and Delaney, but testified that Hendrickson simply offered it to him as a vehicle to use for a couple of days as Hendrickson had borrowed it from one of his neighbors. (Tr. pp. 116-117). Lee denied trading crack cocaine to Hendrickson and Delaney in exchange for the Honda and testified that although Hendrickson and Delaney "actually got some dope, that was not the deal," because "I actually gave them cash to rent the vehicle." (Tr. p. 129). Additionally, Lee acknowledged that the Honda was parked behind his house in the backyard when the Columbus Police Department located the vehicle. (Tr. p. 127).

Lee also testified that Delaney and Hendrickson tried to bring him a Contour but that he "didn't want to be bothered with any more vehicles after ... police had showed up and told me that the van that they supposedly rented me ... was stolen." (Tr. pp. 118-119). However, Lee acknowledged that at the time the Contour was delivered, Delaney and Hendrickson came into his house and used crack cocaine. (Tr. p. 119). Lee also testified that he never received any keys for a Contour. (Tr. p. 129). Finally, Lee testified that Hendrickson and Delaney came to his house again in a Blazer they wanted to trade to him, but that he did not make a trade for the Blazer (Tr. p. 119).

\*\*\*
[The Court found that the evidence showed that]
[B]etween October 30, 2005 and November 22, 2005 Lee received at least two vehicles each worth over $500.00 and that on more than one occasion, Hendrickson and Delaney smoked crack cocaine given to them by Lee after driving to Columbus in the stolen vehicles. Furthermore, one of the stolen vehicles was recovered by the police from Lee's backyard, making it

> clear that Lee received, retained or disposed of at least one of
> the stolen vehicles.

*State v. Lee*, 2006 WL 3350768 (Ohio App.3d Dist. November 20, 2006). Petitioner filed a timely appeal. He asserted the following assignments of error:

> 1. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION OF AQUITTAL BASED UPON THE STATE'S FAILURE TO PROVE VENUE ON ALL OF THE CLAIMS.
>
> 2. THE JURY'S VERDICTS ON THE TWO RECEIVING STOLEN PROPERTY COUNTS AND THE CORRUPT ACTIVITIES CHARGE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

*See id.* On November 20, 2006, the appellate court affirmed the trial court's judgment. *Id.* Petitioner did not file a timely appeal. On March 9, 2007, he filed a motion for delayed appeal. *Exhibits 13, 14 to Motion to Dismiss.* On May 2, 2007, the Ohio Supreme Court denied his motion for delayed appeal and dismissed the appeal. *State v. Lee*, 113 Ohio St.3d 1486 (2007). On March 18, 2008, petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, on April 16, 2008, the appellate court denied petitioner's Rule 26(B) application as untimely. *Exhibits 16, 17 to Motion to Dismiss.* On September 10, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Lee*, 119 Ohio St.3d 1449 (2008).

On May 8, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He executed the petition on April 25, 2008. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States

based upon the following grounds:

> 1. State failed to provide sufficient evidence to prove the crime of R.S.P. as charged in Count II of the indictment (violation of the 14th Amendment Due Process Clause.)
>
> 2. The State failed to provide sufficient evidence to prove beyond a reasonable doubt all essential elements of the crime of Engaging in a Pattern of Corrupt Activity, as charged in Count IV of the indictment.
>
> 3. Trial counsel provided ineffective assistance. A violation of rights guaranteed by the Sixth Amendment.
>
> 4. Trial judge abused his discretion in the sentencing phase of the trial.
>
> 5. Ineffective assistance of appellate [counsel].

It is the position of the respondent that the instant action must be dismissed as time-barred.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 imposed a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented

>from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on January 4, 2007, forty-five days after the Ohio Court of Appeals' November 20, 2006, dismissal of his appeal, and when the time period expired to file a timely appeal to the Ohio Supreme Court. See *Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir. 2001); Ohio Supreme Court Rule of Practice II, Section 2(A)(1)(a). The statute of limitations ran for 63 days, until March 9, 2007, when petitioner filed his motion for delayed appeal. Such action tolled the running of the statute of limitations until May 2, 2007, when the Ohio Supreme Court denied petitioner's motion for delayed appeal. *Lawrence v. Florida*, 549 U.S. 327 (2007). The statute of limitations expired 302 days later, on February 28, 2008. Petitioner waited until April 25, 2008, to execute the instant habeas corpus petition. His March 18, 2008, delayed application to reopen the appeal did not toll the running of the statute of limitations, because he filed such action after the statute of limitations had already expired. The tolling provision does not " 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully

expired." *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y.1998). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See King v. Bell,* 378 F.3d 550, 553 (6th Cir.2004) (citations omitted).

Petitioner contends that the statute of limitations was tolled an additional ninety days from the Ohio Supreme Court's May 2, 2007, denial of his motion for delayed appeal, *i.e.,* the time within which he could have pursued a petition for a writ of *certiorari* in the United States Supreme Court. *See Traverse.* This argument, however, is foreclosed by the United States Supreme Court's decision in *Lawrence v. Florida, supra. See Bustillo-Gonzalez v. Eberlin,* 2009 WL 414668 (N.D. Ohio January 8, 2009)(holding the same). Petitioner contends that *DiCenzi v. Rose,* 452 F.3d 465 (6th Cir. 2006), supports his argument; however, in *DiCenzi v. Rose, supra*, the Ohio Supreme Court granted the petitioner's motion for leave to file a delayed appeal. *See id.*, at 468-69. That case, therefore, is distinguishable from the scenario here.

Petitioner also asserts that this action is timely because he is actually innocent of the charge of receiving stolen property involving the Ford Contour. He contends that the vehicle was not discovered near his home and states that the prosecution misled police regarding this fact. *See Traverse.* Actual innocence may justify equitable tolling of the statute of limitations. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass

9

> through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." FN5 *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

*Id.*, at 589-90. Petitioner has failed to meet this standard here. Petitioner has offered no new evidence to indicate that he is actually innocent of any of the charges at issue. Further, the factual findings of the state appellate court are presumed to be correct, *see* 28 U.S.C. §2254(e),[1] and petitioner has offered no reason to reject the findings of the state appellate court. To the contrary petitioner appears to agree with the state appellate court's

---

[1] 28 U.S.C. §2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

10

factual findings, except that he disputes that the Ford Contour was located near his house. *See Traverse*. Petitioner indicates that vehicle was located some ten to fifteen miles away from his house, and alleges that the State misled the jury regarding this fact. *See id.* In support of his claim of actual innocence, petitioner appears to make the same arguments already rejected by the state appellate court in regard to his claim of insufficiency of the evidence; however, these contentions fail to reflect his actual innocence.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as time-barred under 28 U.S.C. §2244(d).

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C.§636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*,

474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge